# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY AMICK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOCIAL SECURITY ) <br> ADMINISTRATION, Commissioner, ) <br> ) <br> Defendant. ) | Case No.: 2:18-cv-00666-SGC |

## MEMORANDUM OPINION[1]

The plaintiff, Jeffrey Amick, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Amick timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Amick has a high school education and has previously been employed as a delivery driver for United Parcel Service. (Tr. at 205, 234). In his application for DIB, Amick alleged he became disabled on October 1, 2012, as a result of a back

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 15).

1

injury and Ménière's disease. (*Id.* at 87).² After his claim was denied, Amick requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 101). Following a hearing, the ALJ denied Amick's claim. (*Id.* at 18-28).³ Amick was fifty years old when the ALJ issued her decision. (*Id.* at 28, 86). After the Appeals Council denied review of the ALJ's decision (*id.* at 1-4), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Amick commenced this action. (Doc. 1).

## II. **Statutory and Regulatory Framework**

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209,

---

² Ménière's disease is an inner ear disorder that causes vertigo, fluctuating sensorineural hearing loss, and tinnitus. *See* https://www.merckmanuals.com/professional/ear,-nose,-and-throat-disorders/inner-ear-disorders/meniere-disease (last visited September 24, 2019).
³ During the hearing, Amick amended his disability onset date from October 1, 2012 to February 6, 2015. (Tr. at 53).

2

1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Amick would meet the Social Security Administration's insured status requirements through June 30, 2019, and had not engaged in substantial gainful activity since October 1, 2012. (Tr. at 20).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Amick has the following severe impairments: degenerative disc disease, Ménière's disease, sacroiliac joint dysfunction, gastroesophageal reflux disease, allergic

rhinitis, sensorineural hearing loss, generalized anxiety disorder, panic disorder, tinnitus, obesity, spondylolisthesis, sciatica, and peroneal tendinopathy. (Tr. at 20-21).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Amick does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 21).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Amick has the RFC to perform a limited range of light work. (Tr. at 22-23).[4] At the fourth step, the ALJ determined Amick is not able to perform his past relevant work. (*Id.* at 26).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Amick's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy that Amick could perform through his date last insured, such as those of mail clerk, marker, and garment sorter. (Tr. at 27, 81). Therefore, the ALJ concluded Amick is not disabled. (*Id.* at 27-28).

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to

apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Amick argues the ALJ improperly discredited his testimony regarding his pain and other subjective symptoms. (Doc. 12).

A claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, he must satisfy the three-part "pain standard," by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *see also Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (citing *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 404.1529; SSR 16-3p.[5] A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.

---

[5] SSR 16-3p applies to disability determinations made on or after March 28, 2016. *See Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 704 (11th Cir. 2018) (noting the version of SSR16-3p republished in October 2017 clarified SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that SSA expected federal courts to use version of rule in effect at time SSA issued decision under review). The ALJ issued the decision under review on July 6, 2017. (Tr. at 28).

7

*Brown*, 921 F.2d at 1236 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1552 (11th Cir. 1986)).

An ALJ may discredit a claimant's testimony regarding his pain or other subjective symptoms provided he or she clearly articulates explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Taylor*, 2019 WL 581548, at *2 (citing *Dyer*, 395 F.3d at 1210). In evaluating a claimant's testimony and other statements regarding the intensity, persistence, and limiting effects of his symptoms, an ALJ considers all available evidence, including objective medical evidence; the type, dosage, and effectiveness of medication taken to alleviate symptoms; and treatment other than medication received to relieve symptoms. 20 C.F.R. § 404.1529(c).

The ALJ articulated multiple reasons for discrediting Amick's testimony regarding the intensity, persistence, and limiting effects of his pain and other subjective symptoms. First, the ALJ determined Amick's reported activities are not consistent with allegations of disabling back pain. (Tr. at 24). Substantial evidence supports this determination. While noting limitations, Amick and his wife reported his daily activities in March 2015 included helping get their children ready for school; feeding their dog; doing a couple loads of laundry; picking up around the house; preparing for church youth lessons; communicating via e-mail, text, and

8

telephone; and picking their children up from school. (*Id.* at 216-18, 226-28). While again noting limitations, Amick and his wife also reported he was able to do yard work, attend church, and take his children to sporting events and the park. (*Id.* at 218, 220, 228, 230). Both Amick and his wife indicated he has had no problem with personal care (e.g., bathing, dressing). (*Id.* at 217, 227). During a consultative medical evaluation in April 2015, Amick reported to Dr. Sarah Perez that his activities included yard work and house work, he served as a part-time youth minister at his church, and he was able to care for himself without limitation. (*Id.* at 561). Finally, although Amick testified during the hearing before the ALJ in April 2017 that he had stopped walking for exercise approximately two-and-a-half years earlier, records made by Amick's psychiatrist in January, March, April, May, June, August, and November 2016, and in January and March 2017, note Amick walked "regularly" – more specifically, three or four times per week. (*Id.* at 566, 569, 572, 611, 614, 955, 958, 961).[6]

Second, the ALJ determined Amick's Ménière's disease is relatively well-controlled and Amick would be less likely to experience associated symptoms if he was compliant with the recommended low-sodium diet. (*Id.* at 24). Substantial

---

[6] The undersigned also notes that shortly before being discharged from a course of physical therapy in December 2015, Amick reported he had no back pain and his back was 80% better. (Tr. at 839). After returning to physical therapy to address a variety of complaints, including back pain, Amick told his orthopedist in April 2016 that the physical therapy was helping. (*Id.* at 742).

9

evidence from the relevant period supports this determination. Amick underwent a left endolymphatic shunt procedure in November 2009 after other medical interventions failed to control the episodic vertigo he experienced as a symptom of Ménière's disease. (*Id.* at 358-59). He reported the procedure significantly improved his symptoms for a period of three years. (*Id.* at 608). Although he experienced recurrent dizziness after that period, between November 2009 and April 2015 he had only two episodes of vertigo accompanied by vomiting. (*Id.* at 561, 608, 624, 627-28, 631-32, 634). Amick received a series of steroid perfusions in August 2015 to address dizziness and other symptoms. (*Id.* at 646). In September 2015, Dr. Grayson K. Rodgers, an ear specialist, noted all Amick's symptoms were improved and "mild by comparison," although not completely resolved. (*Id.*).

Nonetheless, Amick told Dr. Dennis G. Pappas, Jr., another ear specialist, in October 2015 that in addition to dizziness he experienced constant tinnitus and progressively worsening hearing loss in his left ear. (*Id.* at 608).[7] Dr. Pappas advised Amick to work on his compliance with a low-sodium diet to address his dizziness, and Amick acknowledged there was room for him to improve with respect to diet compliance. (*Id.* at 607-08). When Amick returned to Dr. Pappas in January 2016, he reported his dizziness seemed better on a strict low-sodium diet, while

---

[7] The undersigned notes the record indicates Amick's hearing loss is only mild to moderate and Amick communicates without difficulty. (*See, e.g.*, Tr. at 561, 602, 607).

10

admitting there was room for further improvement with respect to diet compliance. (*Id.* at 604). In May 2016, Dr. Pappas noted Amick was following a low-sodium diet with good compliance and that Amick reported a direct correlation between non-compliance with the diet and the worsening of his dizziness. (*Id.* at 602).

In July 2016, Amick described his "salt habit" to Dr. Ricky L. Fennell, an internist, as "terrible." (*Id.* at 620). Dr. Fennell told Amick many of his problems were associated with poor lifestyle habits and asked him to reduce the salt content in his diet. (*Id.* at 621). In August 2016, Amick also admitted to Dr. Pappas he again was not in compliance with the recommended low-sodium diet. (*Id.* at 943). When Amick told Dr. Fennell in September 2016 that there still was perhaps too much salt in his diet, Dr. Fennell noted Amick had to do a better job of reducing his salt intake. (*Id.* at 619).

In December 2016, Amick told Dr. Pappas his dizziness had recurred and worsened over the past three or four months, notwithstanding his compliance with the recommended low-sodium diet. (*Id.* at 939). Dr. Pappas gave Amick several treatment options, and Amick chose another course of steroid perfusions. (*Id.* at 937-38). After receiving a perfusion in January 2017, Amick reported in February 2017 that his dizziness had not improved. (*Id.* at 934). However, Dr. Pappas indicated a head cold may have temporarily delayed Amick's progress and that he would proceed with another perfusion. (*Id.*).

11

In sum, the record demonstrates historical improvement of Amick's Ménière's disease symptoms with medical and dietary interventions, and there are no treatment notes between February 2017 and July 6, 2017 (i.e., the date of the ALJ's decision) that suggest Dr. Pappas' hypothesis a head cold temporarily delayed Amick's progress while undergoing steroid perfusions was incorrect.[8]

As additional evidence inconsistent with Amick's allegations of disabling pain and other subjective symptoms, the ALJ noted the findings and opinions of Dr. Perez, the consultative medical evaluator. (*Id.* at 25). Dr. Perez determined Amick had no limitations for walking, standing, sitting, or lifting, and only minimal limitations for climbing due to balance issues secondary to his Ménière's disease. (*Id.* at 564).

Amick points to other evidence he claims supports his allegations of disabling pain and other subjective symptoms. (Doc. 12 at 7-15). However, as stated, the relevant question is not whether evidence supports Amick's argument, but whether substantial evidence supports the ALJ's determination. *See Moore*, 405 F.3d at 1213 (discussing "narrowly circumscribed" nature of appellate review).

Amick also claims the ALJ's decision to discredit his testimony was in error

---

[8] Records of appointments Amick had with Dr. Pappas after the ALJ issued her decision indicate the steroid perfusions Amick received in early 2017 did not significantly improve his dizziness. (Tr. at 37, 39). The Appeals Council noted that while this evidence does not affect the ALJ's decision because it does not relate to the period at issue, Amick could submit a new application for disability benefits based on the additional evidence. (*Id.* at 2).

12

because the ALJ evaluated the record using the wrong disability onset date. (Doc. 12 at 6-7). Amick is correct that while he amended his disability onset date from October 1, 2012, to February 6, 2015, during the hearing before the ALJ, the ALJ identified October 1, 2012, as the disability onset date in her decision. (Tr. at 20, 53). However, this typographical error or misstatement does not warrant reversal of the Commissioner's decision, given the ALJ considered evidence from a period inclusive, not exclusive, of the period between the amended disability onset date and date of her decision.

Because the ALJ clearly articulated explicit and adequate reasons for discrediting Amick's testimony regarding his pain and other subjective symptoms and that determination is supported by substantial evidence, the ALJ did not commit error. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1266 (11th Cir. 2002) (holding ALJ properly discredited claimant's testimony regarding his degree of impairment where that testimony was not consistent with objective medical evidence, daily activities, limited use of pain medication, and effectiveness of treatment).

## V. **Conclusion**

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned find the Commissioner's decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 25th day of September, 2019.

_/s/ Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE